**EXHIBIT 2**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WALTER P. HUGHES,            )
                            )
              Plaintiff,    )
                            )
v.                          )      Civil Docket No. 01 10981MLW
                            )
THOMAS McMENAMON, JR.       )
                            )
and                         )
                            )
AMERICA ONLINE, INC.,       )
                            )
              Defendants.   )
                            )

## DEFENDANT AMERICA ONLINE, INC.'S MOTION TO DISMISS

Defendant America Online, Inc., by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves this Court to dismiss all of Plaintiff's claims against it for failure to state a claim upon which relief can be granted. The reasons requiring dismissal are set forth in the accompanying Memorandum and Appendix, which are incorporated by reference.

Respectfully submitted,

Of Counsel:                        Patrick J. Carome
Laura A. Heymann                   B.B.O. #542808
America Online, Inc.               David W. Ogden
22000 AOL Way                      Neil M. Richards
Dulles, Virginia 20166-9323        WILMER, CUTLER & PICKERING
                                   2445 M Street NW
                                   Washington, DC 20037
                                   Phone: (202) 663-6000
                                   Fax: (202) 663-6363

1

Paul Holtzman
KROKIDAS & BLUESTEIN LLP
B.B.O. # 563184
141 Tremont Street
Boston, MA 02111
Phone: (617) 482-7211
Fax: (617) 482-7212

Attorneys for Defendant America Online, Inc.

July 31, 2001

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the above and foregoing Motion to Dismiss has been served upon the following counsel of record via first class United States mail, postage prepaid, this 31st day of July, 2001:

Walter P. Hughes
13 Lockway Road
Andover, Massachusetts 01810
Plaintiff Appearing *pro se*

Joseph L. Tehan, Jr., Esq.
Katharine I. Goree, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue
Boston, Massachusetts 02116
Counsel for Defendant McMenamon

Maurice J. Lariviere, Jr., Esq.
41 Pleasant Street
Suite 311
Methuen, Massachusetts 01844
Counsel for Defendant McMenamon

David W. Ogden

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER P. HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                          ) | Civil Docket No. 01 10981MLW |
| ) | |
| THOMAS McMENAMON, JR. ) | |
| ) | |
| and                          ) | |
| ) | |
| AMERICA ONLINE, INC.,   ) | |
| ) | |
| Defendants.  ) | |

# DEFENDANT AMERICA ONLINE, INC.'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Of Counsel:
Laura A. Heymann
America Online, Inc
22000 AOL Way
Dulles, Virginia 20166-9323

WILMER, CUTLER & PICKERING
Patrick J. Carome
B.B.O. #542808
David W. Ogden
Neil M. Richards
2445 M Street NW
Washington, DC 20037
Phone: (202) 663-6000
Fax: (202) 663-6363

Paul Holtzman
B.B.O. # 563184
KROKIDAS & BLUESTEIN LLP
141 Tremont Street
Boston, MA 02111
Phone: (617) 482-7211
Fax: (617) 482-7212

July 31, 2001                                   Attorneys for Defendant America Online, Inc.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND..................................................................................2

ARGUMENT......................................................................................................7

I.     ALL OF PLAINTIFF'S CLAIMS ARE FATALLY DEFECTIVE AS A MATTER OF
LAW AND SHOULD BE DISMISSED. ............................................................7

     A.    All of Plaintiff's Constitutional Claims Against AOL Fail for Want of State
Action .........................................................................................7

     B.    Plaintiff's Claims for Abuse of Process and Malicious Prosecution Fail to
State a Claim.................................................................................9

     C.    Plaintiff's Claims Against AOL Under Federal and State Wiretap Statutes
Also Fail to State a Claim...............................................................11

           1.    Plaintiff's ECPA Counts Fail to State a Claim Because He Does
Not Allege Any Interception or Disclosure of the Contents of
Any Electronic Communication ...............................................11

           2.    Plaintiff's Allegations Under the Massachusetts Wiretap Statute
Also Fail to State a Claim. .....................................................15

     D.    Plaintiff's Remaining State Law Claims Are Frivolous .........................17

II.    PLAINTIFF'S CLAIMS MUST BE DISMISSED IN ANY EVENT BECAUSE THE
PARTIES' CONTRACT REQUIRES THAT THEY BE LITIGATED IN VIRGINIA...18

CONCLUSION....................................................................................................20

## PRELIMINARY STATEMENT

Plaintiff Walter P. Hughes seeks to hold Defendant America Online, Inc. ("AOL") liable — under a scattershot array of constitutional, statutory and common law legal theories — for doing nothing more than allegedly disclosing to a police officer information about the identity of an AOL subscriber whose AOL account was the source of an imminent death threat sent by e-mail to another AOL subscriber.  The Complaint appears to allege that AOL made such disclosures twice, first in response to an urgent request from the police officer shortly after the victim of the death threat asked the police for help, and second in response to a court order issued by the Lawrence District Court a few days later.

In sum and substance, the Complaint attempts to portray AOL's performance of a basic civic duty — namely, its compliance with a police request for assistance where a human life apparently was at risk and with a court order issued in support of an ongoing criminal investigation — as unlawful acts.  This is preposterous for a whole host of reasons.  Plaintiff's state and federal constitutional claims fail because AOL is not a state actor.  His state and federal wiretapping claims fail both because he has not alleged facts showing that AOL either intercepted a "communication" or disclosed the "contents" of a "communication" within the meaning of the relevant statutes, and because when he first became an AOL subscriber he consented to the very sorts of disclosures that allegedly occurred here.  Finally, all of his remaining state law claims against AOL are patently frivolous.  Because all of these fatal defects are evident from the face of the Complaint (as well as from certain key documents that Plaintiff references in the Complaint and that AOL now submits), the Complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Point I.)

1

Alternatively, if for any reason this Court does not dismiss all of the claims against AOL in their entirety based on their facial substantive defects, the Complaint against AOL should be dismissed nonetheless because Plaintiff agreed in the written Member Agreement governing his relationship with AOL that all disputes between himself and AOL would be subject to the "exclusive jurisdiction" of "the courts of Virginia." (Point II.)

## FACTUAL BACKGROUND

AOL is a provider of an electronic communications service that (among other things) permits its subscribers (or "members") to transmit electronic mail (or "e-mail") to one another and to others over the Internet. (Compl. ¶¶ 3, 16, 17.) At all relevant times, Hughes was a subscriber to the AOL service. (*Id.* ¶ 18.)

Although the allegations of the Complaint are somewhat difficult to follow, they appear to boil down to the following.[1] According to the Complaint, on April 17, 2000, a person — apparently a Methuen resident and AOL subscriber — received an e-mail containing a vulgar death threat from another AOL user. (*Id.* ¶¶ 19, 24, 32.) The text of this e-mail read as follows:

> I've been watching you for years and I think it's time to make my move. you better lock your doors and windows and stay inside all week, or youll see your name in the obituaries in the news paper and under the heading [e-mail recipient's true name] it will read gutted like a fish.
>
> you better watch your back or tommorow might be your last day on this fuckin' planet.
>
> love always
>
> murder

---

[1]   Because this case is before the Court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), AOL must treat Plaintiff's factual allegations as if they were true. *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1990). In reciting Plaintiff's allegations herein, AOL of course does not concede that any of them are true in fact.

2

(A print-out of this e-mail, which AOL obtained from the public file associated with the subsequent criminal prosecution of Plaintiff, is included at Tab A of the Appendix to this Memorandum. AOL has redacted the victim's name to protect her privacy.[2]) Because the sender of this e-mail was identified only by the AOL screen name of "MooMoo868790043," the true identity of the author of the death threat could not be determined from the face of the e-mail.[3] (*See* Appendix Tab A.)

    Apparently fearing that the recipient's life was in danger and seeking protection, the father of the recipient of this death threat brought a printout of the e-mail to the Methuen Police Department on April 17, shortly after she received it. (Compl. ¶ 19.) Defendant Officer Thomas McMenamon perceived the e-mail to constitute, under Massachusetts law, a threat to murder the recipient, and immediately began to investigate the matter. (*Id.*) Because the identity of the author of the threat could not be determined from the e-mail itself, Officer McMenamon immediately commenced efforts to identify the author. (*Id.* ¶ 20.)

---

[2]    Although the Complaint repeatedly refers to this e-mail (*e.g.*, Compl. ¶¶ 19, 20, 21), the Complaint fails to set forth the entire contents of the e-mail or to include it as an attachment. It is nonetheless plainly appropriate for AOL to submit, and for the Court to consider, the full text of the document in the context of a motion to dismiss under Rule 12(b)(6), both because the e-mail is central to Plaintiff's claims and because its authenticity as the document provided to the Methuen Police Department by the recipient is undisputed. *See, e.g., Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (On a motion to dismiss, "a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment."); *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir. 1991) (considering offering documents submitted by defendants with motion to dismiss claim of securities fraud); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014-15 (1st Cir. 1988) (considering allegedly libelous article submitted by defendants with motion to dismiss).

[3]    A "screen name" is the name that an AOL subscriber selects to identify himself or herself when communicating online. AOL permits its subscribers to have multiple screen names associated with a single AOL account. It is commonplace for a screen name to bear no resemblance to its user's real name.

According to the Complaint, within minutes of receiving the victim's report, Officer McMenamon telephoned AOL and requested that AOL provide him with the identity of the subscriber whose AOL account was associated with the screen name appearing on the death threat. (*See id.* ¶¶ 20-24.) Before complying with this request, AOL allegedly required Officer McMenamon to "attest that the contents of [the] e-mail showed probable cause of a crime" and to "promise to obtain an after the fact court order" compelling such disclosure. (*Id.* ¶ 21.) After Officer McMenamon certified to AOL that there was probable cause that the information requested would lead to evidence of a present or future crime, AOL allegedly informed Officer McMenamon that the AOL account associated with the screen name on the death threat belonged to Plaintiff. (*Id.* ¶ 22.) The Complaint alleges that AOL merely disclosed Plaintiff's name, address and age; it does not allege that AOL accessed or disclosed any communications of or by Plaintiff. (*Id.*)

According to the Complaint, Officer McMenamon next contacted Plaintiff, who admitted that his AOL account included the screen name associated with the death threat. (*Id.* ¶ 24.) Officer McMenamon then allegedly engaged in a "campaign of coercion" that began with his demand that Plaintiff perform some unspecified "police function" and quickly developed into the commencement of a full-fledged criminal prosecution of Plaintiff for the alleged crime of "threatening to murder" the recipient of the e-mail. (*Id.* ¶¶ 25-29.) The Complaint does not allege that AOL participated in any of these allegedly coercive police or prosecutorial actions.

The Complaint also alleges that on April 20, 2000, Officer McMenamon caused a Massachusetts state court to issue a "summons" commanding AOL "to produce records in an alleged criminal trial in which Plaintiff was the alleged defendant." (*Id.* ¶ 30.) The Complaint does not allege what AOL did in response to this court order. Nowhere in the Complaint does

4

Plaintiff allege that this court order was not legally binding upon AOL. Plaintiff concludes by

alleging that the Commonwealth prosecuted him for threatening to murder the e-mail recipient,

but that the charges were ultimately dropped on motion of the prosecutor. (*Id.* ¶¶ 31-39.) None

of the Complaint's allegations concerning the initiation and termination of the criminal

proceeding mentions AOL in any way.

Plaintiff's Complaint contains numerous references to AOL's Privacy Policy, including

allegations that it forms "an inducement . . . to purchase Defendant AOL's e-mail service"

(Compl. ¶ 44) and constitutes a "self imposed duty to protect" Plaintiff's "privacy rights" (*id.*

¶ 76(d)). The Complaint also refers to the AOL Community Guidelines that govern the online

conduct of AOL members, alleging that they "prohibit . . . extending subscriber service to a

person whose access to e-mail is used to threaten the life or safety of a human being." (*Id.* ¶ 17.)

The Privacy Policy and Community Guidelines are associated with and referred to in AOL's

Member Agreement, which bound Plaintiff, as an AOL member (*Id.* ¶ 18), during the time

period relevant to this case. (The Member Agreement, Privacy Policy, and Community

Guidelines, which together constitute AOL's Terms of Service, are included in the

accompanying Appendix at Tabs B, C and D, respectively.[4]) The Community Guidelines make

clear to prospective users that AOL has "zero tolerance for illegal behavior on the service," and

that AOL "cooperate[s] with law enforcement on such matters." (*See* Appendix Tab D at 2.)

---

[4]    Because the Complaint makes repeated references to components of the AOL Terms of Service, and because their authenticity is not disputed, it is appropriate for AOL to submit, and for the Court to consider, the entirety of the three-part Terms of Service in the context of AOL's motion to dismiss. *See supra* note 2. Consideration of the terms of the Member Agreement is also essential in connection with AOL's alternative argument that the Complaint against AOL must be dismissed pursuant to that agreement's unambiguous forum selection clause.

5

AOL's Privacy Policy — specifically referenced in Complaint ¶ 95 — in turn clearly states that AOL will disclose a user's name, address, telephone number, and other identifying information to comply with legal process or in case of a "physical threat" to the user or others:

> We do not give out your telephone number, credit card information or screen names, unless you authorize us to do so. . . . When you join AOL, we ask you for your name, address, telephone number, and billing information — including the credit card, checking account, or debit card used to pay for your account — and the various screen names you want to use on your account. Here is how we protect that information: AOL will not give out your telephone number or screen names (e-mail addresses), except where needed to deliver a product or service you ordered. . . . We will not give out information that would link your screen names with your actual name. . . . *We have two exceptions to these policies: We will release specific information about your account only to comply with valid legal process such as a search warrant, subpoena or court order, or in special cases such as a physical threat to you or others.*

(Privacy Principle #3, AOL Privacy Policy, Appendix Tab C, at 2 (emphasis added).) By becoming subscribers to the AOL service, all AOL subscribers consent to release of their information on these limited terms.

Apart from wholly conclusory and unsupported allegations of "conspiracy," therefore, the Complaint alleges nothing more than that AOL responded to the urgent request of a police officer and a subsequent court order seeking information and records that would identify the person whose AOL screen name and AOL account were the source of an imminent threat to commit murder. As demonstrated below, these allegations are plainly not actionable.

6

## ARGUMENT

### I.    ALL OF PLAINTIFFS CLAIMS ARE FATALLY DEFECTIVE AS A MATTER OF LAW AND SHOULD BE DISMISSED.

Plaintiff alleges that AOL's response to Officer McMenamon's urgent request on April 17 and the court order on April 20 effected twelve separate constitutional, statutory and common law torts under federal and state law. Even under the facts as pleaded, none of these vague and conclusory allegations states a claim against AOL upon which relief can be granted. Although a motion to dismiss takes the facts and reasonable inferences from them as pleaded by the Complaint, *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993), this Court has made clear that "[t]he standard for stating a claim upon which relief can be granted is not, however, 'toothless.' Plaintiffs must set forth 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory.'" *Sebago, Inc. v. Beazer East, Inc.,* 18 F. Supp. 2d 70, 78-79 (D. Mass. 1998) (citations omitted). Furthermore, the court "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). Under these familiar standards, all of Plaintiff's claims must be dismissed.

### A.    All of Plaintiff's Constitutional Claims Against AOL Fail for Want of State Action.

Counts One through Four of the Complaint allege that AOL conducted unlawful searches and seizures in violation of both the Fourth Amendment of the United States Constitution (Compl. ¶¶ 45-51, 52-58) and the analogous provision of the Massachusetts Constitution, Article Fourteen of the Massachusetts Declaration of Rights (*id.* ¶¶ 59-64, 65-70). Whatever dubious merit these claims might have against a police officer, such as Officer McMenamon, they plainly fail against AOL for want of state action and should be dismissed.

7

The Fourth Amendment and Massachusetts' Article Fourteen protect individuals only from *state* action and not from the actions of *private persons*. *See United States v. Mitchell*, 85 F.3d 800, 803 n.1 (1st Cir. 1996) ("Company's search was a purely private search and seizure that did not involve official action; as such, it does not come under the Fourth Amendment, which does not proscribe unreasonable searches and seizures by private persons."); *District Attorney v. Coffey*, 434 N.E.2d 1276, 1279 (Mass. 1982) ("Neither the Fourth Amendment nor art. 14 is implicated when the State is not involved in the private 'search,' even when the evidence is subsequently given to the police."). As a private "for-profit corporation" (Compl. ¶ 3), AOL is not a part of any government, state or federal. Shorn of "unsubstantiated conclusions," the Complaint merely alleges that AOL was the recipient of a police request and a court order for information, and responded by providing information from its business records. On their face, these alleged actions of AOL were merely those of a private entity, and therefore the element of state action that is a prerequisite to all of Plaintiff's constitutional claims is obviously lacking.[5/]

Courts have repeatedly dismissed on state action grounds other frivolous lawsuits similar to this one that have alleged that AOL or another interactive computer service provider had

---

[5/]    Moreover, in *United States v. Hambrick*, No. 99-4793, 2000 WL 1062039 (4th Cir., August 3, 2000), *cert. denied*, 121 S. Ct. 832 (2001) (attached at Appendix Tab J), the Fourth Circuit recently held that a subscriber, such as Plaintiff, has no cognizable Fourth Amendment interest in the business records pertaining to him maintained by an Internet service provider, such as AOL. That court explained that in *United States v. Miller*, 425 U.S. 435 (1976), the Supreme Court "emphasized that an individual has no Fourth Amendment privacy interest in information released [by the individual] to a third party [such as AOL] and later conveyed by that party to a governmental entity." 2000 WL 1062039 at *3. Accordingly, here, as in *Hambrick*, Plaintiff's rights cannot have been violated when "the government merely obtained non-content information that was part of [AOL's] business records." *Id.* at *3 n.4. Plaintiff's lack of a protected privacy interest in AOL's business records therefore provides an independent basis to dismiss Counts One through Four.

8

violated a plaintiff's constitutional rights. *See, e.g., Green v. America Online, Inc.*, No. 00-3367

(JAG) (D.N.J. Dec. 20, 2000) (letter op., at 8) (attached as Appendix Tab E); *Muni v. America*

*Online, Inc.*, No. 99-300 (AET) (D.N.J. Aug. 6, 1999) (slip op. at 3-4) ("Since plaintiff has failed

to offer any evidence which would suggest that defendant or its conduct satisfies the 'state action

requirement,' plaintiff's claims of constitutional violations are dismissed.") (attached as

Appendix Tab F); *Cyber Promotions, Inc., v. America Online, Inc.*, 948 F. Supp. 436, 441 (E.D.

Pa. 1996) (dismissing First Amendment claim against AOL on ground that it is not a state actor);

*CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1025-26 (S.D. Ohio 1997)

(dismissing First Amendment claim against interactive computer service provider due to absence

of state action). Accordingly, Plaintiff's constitutional claims alleging that AOL violated his

state and federal rights to be free from unreasonable searches are without legal merit and should

be dismissed.

**B.    Plaintiff's Claims for Abuse of Process and Malicious Prosecution Fail to State a Claim.**

Plaintiff alleges in Count Five that "Defendant AOL committed abuse of process when it

willfully and knowingly participated in a scheme to coerce Plaintiff into performing a police

function." (Compl. ¶ 72.) Under Massachusetts law, "[t]o constitute a cause of action for [abuse

of process] it must appear that the process was used to accomplish some ulterior purpose for

which it was not designed or intended, or which was not the legitimate purpose of the particular

process employed." *Gabriel v. Borowy*, 324 Mass. 231, 236 (1949) (citations omitted); *see also*

*Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 775-76 (1986); *Beecy v.*

*Pucciarelli*, 387 Mass. 589, 595-596 (1982); *Jones v. Brockton Pub. Mkts., Inc.*, 369 Mass. 387,

389 (1975). Plaintiff's claim is meritless for a number of reasons. First, Plaintiff has not

identified an "ulterior purpose." So far as appears from the allegations of the Complaint, AOL's

purpose was simply to comply with a facially valid request for information from law enforcement about a possible crime. To the extent the allegation about a "police function" may be seen as an attempt to identify an ulterior purpose, Plaintiff has not explained what this general term refers to, nor offered any explanation whatsoever how or why AOL could have desired or been involved in any attempt to force Plaintiff into performing such a function. Finally, Plaintiff has not alleged any process that AOL abused. Indeed, except for numerous conclusory allegations about AOL's bad faith, the Complaint alleges no more facts relevant to this claim than that AOL complied with an urgent facially valid law enforcement request and court order for subscriber information pertinent to a possible crime and threatened murder. Plaintiff has not alleged that AOL participated in or directed any decision to bring any process against Plaintiff.

Plaintiff alleges in Count Six that "Defendant AOL willfully and knowingly committed malicious prosecution when it participated in the instigation and perpetuation of a prosecution with actual malice." (Compl. ¶ 76.) To constitute malicious prosecution under Massachusetts law, "a plaintiff must establish that the criminal action was brought maliciously, without probable cause, and has been terminated in favor of the plaintiff." *Wynne v. Rosen*, 391 Mass. 797, 798 (1984). Plaintiff has not alleged (nor could he) that AOL participated in or directed the decision to prosecute him; indeed, the Complaint alleges facts that can prove nothing more than that AOL acted as a good corporate citizen in providing relevant evidence to law enforcement in an apparently exigent circumstance.

Accordingly, each of these state-law tort claims should be dismissed as a matter of law.

10

C.     **Plaintiff's Claims Against AOL Under Federal and State Wiretap Statutes Also Fail to State a Claim.**

Counts Seven through Ten of the Complaint allege that AOL's release of subscriber information in response to a facially valid law enforcement request and court order constituted an "interception" and "disclosure" of a "communication" in violation of the federal Electronic Communications Privacy Act, 18 U.S.C. § 2501 *et seq.*, and the Massachusetts Wiretap Statute, Mass. G.L. ch. 272 § 99. These allegations fail to state a claim and should be dismissed.

1.     **Plaintiff's ECPA Counts Fail to State a Claim Because He Does Not Allege Any Interception or Disclosure of the Contents of Any Electronic Communication.**

Counts Seven and Eight of the Complaint attempt to allege that AOL violated the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2501-2522, 2701-2710 (collectively, "ECPA").[6/] Specifically, Plaintiff alleges that on April 17 and again on April 20, AOL "used a computer to intercept and secretly disclose the contents of electronic communications held in electronic storage in areas in which Plaintiff had a reasonable expectation of privacy." (Compl. ¶¶ 79, 83.) These allegations fail as a matter of law.

As a general matter, ECPA prohibits any person from "intentionally intercept[ing] . . . any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a), or "intentionally disclos[ing]" the contents of an intercepted communication, 18 U.S.C. § 2511(c). In addition, 18 U.S.C. § 2702(a)(1) prohibits a provider of electronic communications services (such as AOL) from "knowingly divulg[ing] the contents" of an electronic communication while in electronic

---

[6/]     The provisions Plaintiff refers to as the "Stored Communications Act," 18 U.S.C. §§ 2701-2711, are actually no more than Title II of ECPA. *United States v. Moriarty*, 962 F. Supp. 217, 218 (D. Mass. 1997). Although there are differences between the statutes, this memorandum addresses both titles of ECPA together, because Plaintiff pleads them together and because Plaintiff's claims under both titles share the same fatal defects as a matter of law.

11

storage. The statute defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). "Intercept" is defined as "the aural or other acquisition *of the contents* of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added). Thus, to state a claim for a violation of any of these prohibitions, a plaintiff must demonstrate that the defendant either intercepted or disclosed the "*contents*" of an "*electronic communication.*" Plaintiff's ECPA counts fail at the most basic level because they do not identify any "electronic communication" whose "contents" were either intercepted or disclosed by AOL.

First, while the death threat e-mail itself appears to have been an electronic communication, the Complaint alleges that the *recipient of the e-mail*, not AOL, provided this communication to the police. (Compl. ¶ 19.) The Complaint does *not* allege that AOL either intercepted, disclosed, or divulged the contents of this communication. No other "communication" is discussed in the Complaint.

Second, the information AOL allegedly disclosed to the police — a few basic facts about Plaintiff (i.e., his name, address, and age) from AOL's business records (*Id.* ¶ 22.) — could not constitute "the contents of an electronic communication" under ECPA. The statute defines the "contents" of a communication as "any information concerning the substance, purport, or meaning of the communication." 18 U.S.C. § 2510(8). The name, address, or age of a subscriber, obtained from the service provider's business records, obviously is not the "substance, purport, or meaning" of any communication sent by or to the subscriber. Indeed, the statute makes a basic distinction between "contents of communications" and "records or other

12

information pertaining to a subscriber," and has separate schemes governing government access to each. *Compare* 18 U.S.C. § 2703(a)-(b) (contents of electronic communications) *with* § 2703(c) (all other records and information "pertaining to a subscriber"). Indeed, section 2703(c) explicitly singles out "name" and "address" of a subscriber — the very sort of information allegedly at issue in this case — as examples of the types of subscriber information that are *outside* the scope of the provisions concerning "contents" of communications. *See id.* § 2703(c)(1)(C).

This Court and other courts have repeatedly recognized that personal information pertaining to a subscriber of an electronic communications service are fundamentally distinct from the "contents" of the subscriber's communications. *E.g., In re United States*, 36 F. Supp. 2d 430, 432 (D. Mass. 1999) (drawing the distinction between the "*contents* of electronic communications [and] merely records related to them (i.e., personal information of subscribers, user activity logs, billing records and so on)"); *see United States v. Hambrick*, No. 99-4793, 2000 WL 1062039, at *4 (4th Cir., August 3, 2000), *cert. denied*, 121 S. Ct. 832 (2001) (attached as Appendix Tab J) (citing the "critical distinction" between "content" and "account information given to the ISP in order to establish the email account, which is non-content information"). Thus, as in *Jessup-Morgan v. America Online, Inc.* 20 F. Supp. 2d 1105, 1108 (E.D. Mich. 1998),

> [t]he 'content' of a communication is not at issue in this case. Disclosure of information identifying an AOL electronic communication account customer is at issue. In 18 U.S.C. § 2703(c)(1)(C) this identifying information is specifically acknowledged as separate from the 'content' of electronic communications.

*See also id.*, 20 F. Supp. 2d at 1108 ("contents" does *not* include "information concerning the identity of the author of the communication"). Because the Complaint alleges the disclosure of

13

only subscriber information from AOL's business records, it plainly fails to allege any interception or disclosure of the "contents of an electronic communication" under ECPA.

Nor does the Complaint state a claim for the violation of the separate ECPA provisions governing disclosure to governmental entities of *non-content* subscriber information, which are set forth in 18 U.S.C. § 2703(c). First, the Complaint's ECPA allegations purport to complain of alleged disclosures of only "the contents of electronic communications." Second, even if the Complaint could be read as asserting such a claim, the facts alleged would not support it. Section 2703(c)(1)(B)(iii) specifically authorizes a service provider to disclose *any* information pertaining to a subscriber (other than the contents of an electronic communication) pursuant to the consent of the subscriber. This exception is broadly construed. *See Gilday v. DuBois*, 124 F.3d 277, 296 (1st Cir. 1997) ("The consent exemption under [ECPA] is construed broadly as encompassing implied consent."). As discussed above, as a condition of using the AOL service, Plaintiff consented to the AOL Privacy Policy, which expressly permits AOL to disclose such records "to comply with valid legal process such as a search warrant, subpoena or court order, or in special cases such as a physical threat to [the subscriber] or others." (Appendix Tab C at 2.) AOL's release of Plaintiff's contact information on April 17, in the immediate wake of a death threat, certainly fell under the "physical threat to . . . others" provision. Similarly, AOL's release of records in compliance with the state court order of April 20 certainly fell under the "court order" provision. Thus, Plaintiff consented to AOL's release of information under the facts

14

alleged in the Complaint.[7]  This consent immunizes AOL from all liability for the release of

such material.  *See In re United States*, 36 F. Supp. 2d at 432 ("Any provider of electronic

communication or remote computing services that discloses information in accordance with

section 2703 is shielded from liability for any cause of action relating to the disclosure.").[8]

> ### 2. Plaintiff's Allegations Under the Massachusetts Wiretap Statute Also Fail to State a Claim.

In Counts Nine and Ten, Plaintiff claims that on April 17 and April 20 AOL "used a

computer to intentionally secretly intercept and secretly disclose the contents of wire

communications held in electronic storage in areas in which Plaintiff had a reasonable

expectation of privacy" in violation of the Massachusetts Wiretap Act.  (Compl. ¶ 87; *see also id.*

¶ 91.)  Because no allegation of wiretapping or any interception falling within the scope of the

Massachusetts Wiretap Act can reasonably be inferred from the allegations of the Complaint,

these allegations should also be dismissed.

---

[7]    Plaintiff's consent would also bar the Complaint even if he had alleged facts showing that AOL had intercepted or disclosed the contents of an electronic communication.  AOL's Privacy Principle #1, to which Plaintiff also consented as part of AOL's Privacy Policy, specifically authorizes AOL to disclose such contents "to comply with . . . [a] court order" or "during emergencies when AOL "believe[s] physical safety is at risk."  (Appendix Tab C, at 1.).  *See* 18 U.S.C. § 2511(3)(b)(ii) (allowing disclosure of the contents of communications in transmission with the consent of the originator, recipient, or addressee); 18 U.S.C. § 2702(b)(3) (allowing disclosure of the contents of communications in electronic storage with the consent of the originator, recipient, addressee, or subscriber).

[8]    All of Plaintiff's claims relating to AOL's compliance with the April 17 police request and the April 20 court order, whether asserted under ECPA or any other federal or state law, are also unequivocally barred by 18 U.S.C. § 2703(c)(1)(B)(ii), which allows for disclosure of subscriber information pursuant to a court order, and 18 U.S.C. §2707(e)(1), which provides that "a good faith reliance on . . . a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization . . . is a complete defense to any civil or criminal action brought under this chapter or any other law."

As with Plaintiff's ECPA claims, AOL's alleged release of information to help prevent a suspected murder did not constitute either an interception of a "communication" or a disclosure of "contents" under the Massachusetts Wiretap Statute. *See* Mass. Gen. Laws ch. 272, §§ 99(B)(1), 99(B)(4). Like ECPA, the Wiretap Statute bars individuals from "willfully commit[ting] an interception [or] attempt[ing] to commit an interception" and from "willfully disclos[ing] or attempt[ing] to disclose to any person the content of any wire or oral communication, knowing that the information was obtained through interception." *See id.* §§ 99(C)(1), 99(C)(3)(a). Moreover, conforming in relevant respects to ECPA, the Massachusetts Wiretap Statute defines "wire communication" as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like communication between the point of origin and the point of reception." Mass. Gen. Laws ch. 272, § 99(B)(1). Like ECPA, the Massachusetts statute defines "interception" to mean the acquisition of the "the contents of any wire or oral communication through the use of any intercepting device." *Compare* Mass. Gen. Laws ch. 272, § 99(B)(4) with 18 U.S.C. § 2510(4). Because these provisions of the Massachusetts statute are modeled on the federal law, Massachusetts courts have indicated that they look to analogous provisions of ECPA in construing their state statute. *See O'Sullivan v. NYNEX Corp.*, 687 N.E.2d 1241, 1244 n.5 (Mass. 1997) ("Because the Massachusetts Legislature adopted the language of the Federal statute regulating the interception of wire and oral communications, we shall construe the Massachusetts statute in accordance with the construction given the cognate Federal statute by the Federal courts.") (collecting cases).

For the reasons given above under ECPA, therefore, the Complaint alleges neither an "interception" of a "communication" nor the disclosure of the "contents of a communication"

16

within the scope of this Massachusetts Statute. Thus, Counts Nine and Ten likewise should be dismissed for failure to state a claim.

### D.    Plaintiff's Remaining State Law Claims Are Frivolous

Plaintiff alleges in Count Eleven that "AOL engaged in an unfair business practice by violating Plaintiff's constitutional and statutory right to privacy under state and federal law and its own public policy and agreement with Plaintiff." (Compl. ¶ 95.) This vague and conclusory claim is utterly meritless. The statute under which the plaintiff alleges this cause of action is a consumer protection provision that proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93(A) § 2. Plaintiff nowhere alleges how AOL's alleged actions constitute an unfair business practice under the terms of the statute. Accordingly, this claim should be dismissed.

Finally, Count Twelve alleges that as a result of AOL's actions, Plaintiff has suffered "severe emotional distress relevant to the allegations in this complaint" and that AOL intended to cause such distress. In order to establish intentional infliction of emotional distress, "[i]t must be shown . . . that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, that the conduct was 'extreme and outrageous,' . . . that the actions of the defendant were the cause of the plaintiff's distress, . . . and that the emotional distress sustained by the plaintiff was 'severe.'" *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). Plaintiff has not alleged any facts that, if proven true, could possibly support a claim that AOL's actions were outrageous or intended to harm Plaintiff; indeed, AOL's Privacy Policy gave Plaintiff full notice that such actions would be taken under these circumstances. Furthermore, as demonstrated above, even under Plaintiff's allegations,

AOL's actions were entirely lawful. Accordingly, this Count should also be dismissed as meritless.

## II.    PLAINTIFF'S CLAIMS MUST BE DISMISSED IN ANY EVENT BECAUSE THE PARTIES' CONTRACT REQUIRES THAT THEY BE LITIGATED IN VIRGINIA.

Even if any of Plaintiff's claims against AOL were sufficient to survive a motion to dismiss for failure to state a claim, the forum selection clause in the parties' contract would independently mandate dismissal of Plaintiff's claims against AOL.[9/] The Member Agreement that Plaintiff (like all AOL members) accepted when he first subscribed to the AOL service provides that a member "expressly agree[s] that *exclusive* jurisdiction for any claim or dispute with AOL or relating in any way to [his] membership or [his] use of AOL resides in the courts of Virginia . . . ." (AOL Member Agreement § 8 (emphasis added), Appendix Tab B, at 4-5.) All of Plaintiff's claims against AOL are clearly covered by this clause.

As this Court has recognized in a similar context, forum selection clauses such as the one contained in the AOL member agreement are generally enforceable "unless an opposing party demonstrates that enforcement is unreasonable." *Kilgallen v. Network Solutions, Inc.*, 99 F. Supp. 2d 125, 129 (D. Mass. 2000) (enforcing Internet domain name agreement requiring that exclusive jurisdiction lay in Virginia and that Virginia law was governing); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). Massachusetts and Virginia (the state whose laws govern the contract) follow the same rule. *See Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics*, 433 Mass. 122 (2000) (forum selection clause should be enforced "so long as it is

18

fair and reasonable") (quoting Restatement (Second) of Conflict of Laws § 80 (1971 & rev.

1989)); *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990); *see also*

*Kilgallen,* 99 F. Supp. 2d. at 129 ("Courts have long enforced forum selection clauses under

federal common law and Virginia state law unless an opposing party demonstrates that

enforcement is unreasonable.").

In accordance with this rule, numerous courts have already held that the very same clause

in AOL's Member Agreement is valid and enforceable. In *Muni v. America Online, Inc.*, No. 99-

300, slip op. at 7-10 (D.N.J. Aug. 6, 1999) (attached as Appendix Tab F), the Court upheld and

enforced the forum selection clause in AOL's Member Agreement because (1) AOL otherwise

would be subject to litigation in multiple fora, (2) enforcing parties' forum choices conserves

judicial resources by obviating the need for pretrial motions regarding the appropriate forum, and

(3) consumers benefit from such clauses because service providers' costs are reduced by the

limitation on the fora in which they can be sued and these savings can be passed on to

consumers. *Muni,* slip op. at 9-10. *See also Celmins v. America Online, Inc.*, 748 So. 2d 1041

(Fla. Dist. Ct. App. 1999); *Dilorenzo v. America Online, Inc.*, No. 605867/96, slip. op. at 3-5

(N.Y. Sup. Ct. Jan. 22, 1999) (attached as Appendix Tab G); *Groff v. America Online, Inc.*, C.A.

No. PC 97-0331, slip op. at 8-10, 1998 WL 307001 (R.I. Super. Ct. May 27, 1998) (attached as

Appendix Tab H) ("[C]learly plaintiff had the option not to accept defendant's terms. He did

not. He chose to go on line."); *Spera v. America Online, Inc.*, No. 06716/97, slip op. at 4-5 (N.Y.

Sup. Ct. Jan. 27, 1998) (attached as Appendix Tab I); *see also Caspi v. Microsoft Network,*

---

[9]/    In this Circuit, "a motion to dismiss based upon a forum-selection clause is treated as one
alleging the failure to state a claim for which relief can be granted under Federal Rule of Civil
Procedure 12(b)(6)." *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 387 (1st Cir. 2001);
*see also Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 357 (1st Cir. 1989).

19

*L.L.C.*, 732 A.2d 528, 531 (N.J. Super. Ct. 1999) (holding a nearly identical clause in agreements between another Internet service provider and its subscribers to be valid and enforceable).

Plaintiff has not alleged any facts that even begin to suggest why the result should be any different here. Because the forum selection clause in the parties' contract is valid, all claims against AOL should be dismissed. *See, e.g., Muni*, slip op. at 7-10 (D.N.J. Aug. 6, 1999); (dismissing claims against Internet service providers on basis of forum selection clause); *Kilgallen*, 99 F. Supp. 2d at 129 (enforcing Virginia forum selection clause in Internet services contract).

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss should be granted, and the Complaint in this action should be dismissed with prejudice.

Respectfully submitted,

Patrick J. Carome
B.B.O. #542808
David W. Ogden
Neil M. Richards
WILMER, CUTLER & PICKERING
2445 M Street NW
Washington, DC 20037
Phone: (202) 663-6000
Fax: (202) 663-6363

Of Counsel:
Laura A. Heymann
America Online, Inc.
22000 AOL Way
Dulles, Virginia 20166-9323

Paul Holtzman
KROKIDAS & BLUESTEIN LLP
B.B.O. # 563184
141 Tremont Street
Boston, MA 02111
Phone: (617) 482-7211
Fax: (617) 482-7212

July 31, 2001

Attorneys for Defendant America Online, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above and foregoing Memorandum in Support of Defendant's Motion to Dismiss, along with the Appendix thereto, have been served on the following counsel of record via first class United States mail, postage prepaid, this 31st day of July, 2001:

Walter P. Hughes
13 Lockway Road
Andover, Massachusetts 01810
Plaintiff Appearing *pro se*

Joseph L. Tehan, Jr., Esq.
Katharine I. Goree, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue
Boston, Massachusetts 02116
Counsel for Defendant McMenamon

Maurice J. Lariviere, Jr., Esq.
41 Pleasant Street
Suite 311
Methuen, Massachusetts 01844
Counsel for Defendant McMenamon

David W. Ogden

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WALTER P. HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01 10981MLW |
| | ) | |
| THOMAS McMENAMON, JR. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICA ONLINE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### APPENDIX TO DEFENDANT AMERICA ONLINE, INC.'S
### MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Of Counsel:
Laura A. Heymann
America Online, Inc.
22000 AOL Way
Dulles, Virginia 20166-9323

WILMER, CUTLER & PICKERING
Patrick J. Carome
B.B.O. #542808
David W. Ogden
Neil M. Richards
2445 M Street NW
Washington, DC 20037
Phone: (202) 663-6000
Fax: (202) 663-6363

Paul Holtzman
B.B.O. # 563184
KROKIDAS & BLUESTEIN LLP
141 Tremont Street
Boston, MA 02111
Phone: (617) 482-7211
Fax: (617) 482-7212

July 31, 2001

Attorneys for Defendant America Online, Inc.

# TABLE OF CONTENTS

| Title | Tab |
|---|---|
| E-mail from "MooMoo868790043" to "GrLsRuLe14," dated 4/16/00 | A |
| AOL Member Agreement | B |
| AOL Privacy Policy | C |
| AOL Community Guidelines | D |
| *Green v. America Online, Inc.*,<br>No. 00-3367 (JAG) (D.N.J. Dec. 20, 2000) | E |
| *Muni v. America Online, Inc.*,<br>No. 99-300 (AET) (D.N.J. Aug. 6, 1999) | F |
| *Dilorenzo v. America Online, Inc.*,<br>No. 605867/96, (N.Y. Sup. Ct. Jan. 22, 1999) | G |
| *Groff v. America Online, Inc.*,<br>C.A. No. PC 97-0331, (R.I. Super. Ct. May 27, 1998) | H |
| *Spera v. America Online, Inc.*,<br>No. 06716/97, (N.Y. Sup. Ct. Jan. 27, 1998) | I |
| *United States v. Hambrick*, No. 99-4793, 2000 WL 1062039<br>(4th Cir., August 3, 2000), *cert. denied*, 121 S. Ct. 832 (2001) | J |

**EXHIBIT 2, Tab A**

Subj:    **Because i love you so much** ██████
Date:    4/16/00 11:01:03 PM Eastern Daylight Time
From:    MooMoo868790043
To: GrLsRuLe14

Ive been watching you for years and i think its time to make my move. you better lock your doors and windows and stay inside all week. or youll see your name in the obituaries in the news paper. and under the heading ████████████ it will rea gutted like a fish.

you better watch your back or tommorrow might be your last day on this fuckin' planet

love always
murder

red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rur
red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red rur
red rum red rum red rum red rum red  rum red rum red rum red rum red rum red rum red rum red rum red rum red rum red ru
red rum red rumred rum red rum red rum