**EXHIBIT 11**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
1 COURTHOUSE WAY
BOSTON MASSACHUSETTS

Walter P. Hughes, pro se

                Plaintiff,                              INDEPENDENT ACTION

       vs.

    Thomas F. McMenamon, Jr.               Civil Action No. 04-11662(NMG)

        vs..

America Online, Inc.

                Defendants

## INDEPENDENT ACTION, PURSUANT TO RULE 60(b), FEDERAL RULES OF CIVIL PROCEDURE, TO SET ASIDE JUDGMENTS ORDERED IN FEDERAL DISTRICT COURT OF MASSACHUSETTS CIVIL ACTION NO. CV-01-10981

Pursuant to Rule 60(b)(3) and Rule 60(b)(4), Federal Rules of Civil Procedure, Plaintiff, pro se, Walter P. Hughes brings this Independent Action to set aside all applicable judicial orders because they issued pursuant to fraud upon the court and deep-seated bias resulting in deprivation of Plaintiff's due process rights.

### Jurisdiction and Venue

1) This Court has inherent jurisdiction over this independent action because the fraud complained of herein was committed on this Court. Hazel-Atlas Glass Co., v Hartford Empire Co., 322 U.S. 238(1944).

2) Plaintiff has a right to due process guaranteed under the Fifth Amendment to the United States Constitution. 28 U.S.C. §455, Liteky v. United States, 510 U.S. (1994), Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865 (1988)., and The Code of Professional Conduct for Federal Judges require a Federal Judge to maintain an appearance of impartiality.

1

3)   Additionally, the subject-matter jurisdiction of the Court is asserted pursuant to 28 U.S.C. §1332 in that there is diversity of citizenship between the Plaintiff and America Online, Inc., and the amount in controversy substantially exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4)   Venue is properly laid in this Court pursuant to 28 U.S.C. §2391(b) in that the claims arose in this district.

### Parties

5)   Plaintiff Walter Hughes, pro se ("Hughes") is an adult citizen of the Commonwealth of Massachusetts, residing at 13 Lockway Road, Andover, MA01810.

6)   Defendant Thomas F. Officer McMenamon Jr ("Officer McMenamon") is an adult citizen of the Commonwealth of Massachusetts employed as a law enforcement officer by the City of Methuen, Massachusetts.

7)   Defendant America Online, Inc. ("AOL") is a for-profit corporation organized and operating under the laws of the Commonwealth of Virginia, with its principal place of business at 2200 AOL Way, Dulles, Virginia 20166.  AOL is a provider of electronic communication service to the public within the meaning of (18 U.S.C. § 2703(c)(1)(B)(ii)).

8)   At all times relevant to this action Hughes was an AOL member in good standing.

### Background

9)   This independent action arises from United States District Court for the District of Massachusetts civil action number CV-01-10981(RBC), a case presided over by District Court Judge Mark L. Wolf ("Judge Wolf") from July 10, 2001 until March 5, 2002 and

2

from March 5, 2002 until April 30, 2004 by Magistrate Judge Robert B. Collings ("Judge Collings").

10)    Hughes filed his CV-01-10981 Complaint on June 8, 2001 and AOL responded with a Motion to Dismiss dated August 2, 2001.

11)    Hughes seeks to have all judgments ordered in CV-01-10981(RBC) declared void because they were achieved as a result of fraud upon the Court; judicial bias; and deprivation of due process.

12)    The fraud upon the Court occurred as the result of AOL's lawyer signing AOL's Motion to Dismiss dated August 2, 2001 knowing it reflects false allegations supported by fabricated evidence.

13)    The judicial bias and deprivation of due process result from violations of the Code of Conduct for United States Judges, 28 U.S.C.§§ 455(a) and 455(b)(1).

14)    The factual basis for this action derives predominantly from cited declarations and allegations reflected in pleadings signed and filed by lawyers for the defendants..

**Causes Of Action To Set Aside Judgment for Fraud and Fraud Upon the Court Pursuant To Rule 60(b)(3)**

**Introduction**

15)    On August 2, 2001 AOL offered a document to this Court, in a pleading titled Defendant America Online, Inc.'s Motion to Dismiss located at Tab A of the Appendix of Its Memorandum in Support of that motion, as evidence that proves the identity of the parties, existence, contents, substance, purport, or meaning of an alleged e-mail communication AOL alleged was sent by Hughes on April 16, 2000 because it reflects an AOL screen name which AOL asserts It totally controls access to and permits Hughes to

3

use when communicating with other AOL members as a member of AOL's e-mail service.

16)   On November 7, 2001 AOL filed a pleading which contains a declaration, signed under penalty of perjury by J. Charles Wilhelm, AOL's employee in charge of e-mail traffic on April 16, 2000, in which he attests in relevant part, that AOL did not process e-mail on April 16, 2000 with contents reflected by the document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of its Motion to Dismiss.

17)   AOL asserts the source of the evidence located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of its Motion to Dismiss, is the Lawrence District Court file for *Commonwealth v. Hughes* from which AOL's lawyer obtained a copy of all its records on July 20, 2001.

18)   In a declaration made under penalty of perjury, Mark Constable, a paralegal in the employ of AOL's lawyer, fails to attest that any of the documents he obtained from the Lawrence District Court file for *Commonwealth v. Hughes* reflect an AOL screen name he does, however, avow that the document selected and offered to this Court at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of its Motion to Dismiss as evidence to prove the identity of the parties, existence, contents, substance, purport, or meaning of  AOL e-mail stored as data in a computer,  *"[a]ppeared to be a printout of an e-mail dated April 16, 2000 from "MooMoo868790043" to "GrLsRuLe14.""*.

19)   The declaration does not attest that he copied records stored as data on tape, wire, o other similar device; or a warrant indicating intercepted e-mail was introduced as

4

evidence in *Commonwealth v. Hughes*; or a search warrant indicating Officer

McMenamon introduced e-mail evidence; or an arrest warrant indicating Officer

McMenamon received a complaint from a person that she received a threat to her life of

safety on April 16, 2000; or an authorization by a judge allowing access to e-mail records

introduced as evidence to the Lawrence District Court file for *Commonwealth v. Hughes*;

or a document showing a court order commanded AOL to produce e-mail records to the

Lawrence District Court file for *Commonwealth v. Hughes*.

20)   The Mark Constable declarations attests in relevant part:.

*"I, Mark Constable pursuant to 28 U.S.C. § 1746, do hereby declare the following :*

*I am employed as a paralegal by the law firm of Krokidas & Bluestein, L.L.P., in*

*Boston, Massachusetts.  I have been employed in that capacity since October, 1999.*

*The statement of facts in this declaration are based on personal knowledge formed in*

*my capacity as an employee of Krokidas & Bluestein.*

*On the morning of July 20, 2001, I left the offices of Krokidas and Bluestein in Boston*

*and traveled to the Criminal Division Clerk's Office of the Lawrence District Court,*

*located in the Fenton Judicial Center, 2 Appleton Street, Lawrence, Massachusetts.*

*When I arrived at the Clerk's Office, I identified myself as a paralegal for a Boston*

*law firm, and asked a representative of the clerk's office if I could review the criminal*

*file in the case of Commonwealth v. Walter P. Hughes, No. 0018JT3828(Mass. Dist.*

*C. 2000).*

*The clerk's office employee retrieved the criminal file and gave it to me, whereupon I*

*commenced to review the documents in the file.  I requested that the clerk make a*

*copy of the file for me, which she did upon my payment of a fee for the copying. I then returned with my copy of the file to Krokidas & Bluestein in Boston.*

*Among the documents in the copied file was what appeared to be a printout of an e-mail dated April 16, 2000 from "MooMoo868790043" to "GrLsRuLe14." This document appears in all relevant respects to be identical to the document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of its Motion to Dismiss, filed with this Court on August 2, 2001.*

*The document attached to this declaration as Exhibit A is a true and accurate representation of the April 16, 2000, e-mail contained in the Lawrence District Court file for Commonwealth v. Hughes, which I obtained on my visit on July 20, 2001, redacted only to remove the name of the victim.*

*The Lawrence District Court file also contained a police report prepared by Officer McMenamon. That report reflects that Officer McMenamon had received a printout of the threatening email from the recipient at the time the recipient at the time the recipient made her complaint to the police. A copy of that police report, taken from the Lawrence District Court criminal file and redacted only to remove the name of the recipient and her father, is attached hereto as Exhibit B."*

21)    The declaration made by J. Charles Wilhelm attests in relevant part:

*"I, J. Charles Wilhelm, pursuant to 28 U.S.C. § 1746, do hereby declare the following:*

*I am employed as a Product Support Specialist at America Online, Inc. ("AOL"), and have been employed in that capacity since October 1997.*

*The statements and facts in this declaration are based on personal knowledge obtained in the course of my duties as an employee of AOL and based in part on my review of the AOL file in this matter and discussions with other AOL employees pursuant to and in the ordinary course of business.*

*As part of my duties as a Product Support Specialist, I respond to after-hours law enforcement requests for member account information as part of the Tool Performance Management Team ("TPM") at AOL's Mission Control Center in Tucson, Arizona. On April 17, 2000, I was working in this capacity.*

*The document attached to this declaration as Exhibit A is a copy of a document contained in AOL's TPM files.*

*I can state that Exhibit A is a true and accurate copy of a three-page fax document that was faxed to AOL on April 17, 2000, by Officer Thomas McMenamon, Jr., of the Methuen, Massachusetts Police Department, except that Exhibit A has been modified in several places to remove the name of the recipient of the e-mail and of the person who reported the crime.*

*The third page of Exhibit A is the copy of the threat e-mail that was sent to me by Officer McMenamon. This appears to be a printout of an e-mail dated April 16, 2000, from "MooMoo868790043" to "GrLsRuLe14," At the bottom of the document is a line that reads "Sunday April 16, 2000 America Online GrLsRuLe: Page 1." AOL's software produces this line when an e-mail is printed by a user of the software. This particular reflects that the document was printed on April 16, 2000, by a person with the AOL screen name GrLsRuLe14," who was the recipient of the e-mail.*

7

*AOL received the document marked as Exhibit A from Officer McMenamon; it was*

*not produced by AOL to Officer McMenamon from any internal logs of e-mails sent*

*or received by AOL members."*

22) The above declarations were offered to this Court to complement allegations that

rely on evidence introduced at at Tab A of the Appendix of Defendant America Online,

Inc.'s Memorandum in Support of its Motion to Dismiss to prove AOL was justified in

identifying Hughes to a governmental entity as an AOL member who used his AOL

screen name to e-mail a heinous death threat to another AOL member on April 16, 2000,

to wit:

> *"[A]OL responded to the urgent request of a police officer and a subsequent court*

*order seeking information and records that would identify the person whose AOL*

*screen name and AOL account were the source of an imminent threat to commit*

*murder."   :*

> *"Because the sender of this e-mail was identified only by the AOL screen-name*

*of "MooMoo868790043," the true identity of the author of the death threat could*

*not be determined from the face of the e-mail."  .*

> *"[A]OL obtained the printout of the e-mail not through "interception," but*

*rather through a fax transmission from a Methuen police officer (Defendant*

*Thomas McMenamon, Jr.)".*

23) AOL did not declare of allege but it was reported that AOL is unable to control

access to Its database of AOL screen names.

*"America Online Inc. said Friday that vandals had broken into its AOL service and*

*gained access to an undisclosed number of member accounts, highlighting the*

8

*vulnerability of even the world's largest Internet Services provider to the threat of*

*hacker attacks."* (The New York Times on the web, June 18, 2000 (Sunday)).

24) Officer McMenamon acquiesced without proof to AOL's justification for disclosing

Hughes' identity by alleging, with proof to the contrary, that AOL terminated e-mail

service to Hughes on April 16, 2000:

> *"AOL is a provider of an electronic communications service that (among other*
>
> *things) permits its subscribers (or "members") to transmit electronic mail (or "e-*
>
> *mail") to one another and to others over the Internet. At all relevant times, Hughes*
>
> *was a subscriber to the AOL service."*
>
> *"AOL maintains a Privacy Policy, and Community Guidelines that govern the*
>
> *online conduct of AOL members, including a prohibition against "extending*
>
> *subscriber service to a person whose access to e-mail is used to threaten the life or*
>
> *safety of a human being.""*

25) The proof to the contrary is a declaration by a paralegal in AOL's employ who

declared under penalty of perjury:

> *"[A]OL is a provider of electronic communications and information services,*
>
> *including electronic mail services."; "[A]ccording to AOL's business records,*
>
> *Plaintiff Walter Hughes became an AOL subscriber in Setptember 26, 1998, and*
>
> *remained a subscriber until his membership terminated on November 24, 2000."*

## I.

26) Considering the fact that Mark Constable did not declare the Lawrence District

Court file for *Commonwealth v. Hughes* contained a record that reflects an AOL screen

name or contents of an e-mail communication one of two things must be true. Either the

9

document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss is fabricated to appear to reflect contents of an e-mail communication sent by Hughes or the document that appeared to be a printout of e-mail is not supported by evidence that Officer McMenamon collected in the course of his police investigation. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and AOL's lawyer perpetrated a fraud upon this Court.

## II.

27) Considering the fact J. Charles Wilhelm states that the source of the evidence located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss is a fax transmission that reflects an AOL screen name and inscriptions peculiar to AOL e-mail but in truth is not AOL e-mail received by an AOL member on April 16, 2000 one of two things must be true. Either there is undisclosed evidence that proves a fax transmission accurately reflects data stored in the computer of a sender or recipient of e-mail who are not AOL members or the evidence located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss was fabricated to appear to be a printout of AOL e-mail. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and AOL's lawyer perpetrated a fraud upon this Court.

## III.

10

28)    Considering the allegation that states AOL responded to a court order with information and records that would identify a person by a reflected AOL screen name one of two things must be true. Either Mark Constable obtained a copy of a court order that commands AOL to produce evidence regarding AOL e-mail or an AOL screen name or the allegation that AOL responded to a court with information and records that identified the person whose screen name and AOL account were the source of an imminent threat to commit murder is false. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and AOL's lawyer perpetrated a fraud upon this Court.

## IV.

29)    Considering the allegation that states a person with an AOL account was the source of an imminent threat to commit murder one of two things must be true. Either Mark Constable failed to state he obtained evidence that an AOL e-mail account was the source of a threat to commit murder or J. Charles Wilhelm committed perjury when he declared that the source of the document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss is neither AOL nor an AOL member. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and AOL's lawyer perpetrated a fraud upon this Court.

11

## V.

30) Considering the allegation that states a person with an AOL account was the source of an imminent threat to commit murder one of two things must be true. Either Mark Constable obtained a copy of an arrest warrant that proves a person complained to Officer McMenamon that she received a threat to her life or neither the Lawrence District Court file for *Commonwealth v. Hughes* nor the CV-01-10981(RBC) record contains evidence that Hughes sent an e-mail threat to murder another AOL member on April 16, 2000. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and AOL's lawyer perpetrated a fraud upon this Court.

## VI.

31) Considering the allegation that states the author of e-mail cannot be determined from its face one of two things must be true. Either AOL identified Hughes as the author of a life-threatening e-mail from the face of a printout of e-mail in contradiction to the allegation or the document offered as evidence at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss does not identify the author of an e-mail threat to commit murder as alleged. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and AOL's lawyer perpetrated a fraud upon this Court.

12

## VII.

32)   Considering AOL's allegation that a fax transmission is the source of allegations that a printout of e-mail reflects an AOL screen name, one of two things must be true. Either AOL's Motion to Dismiss is a false pleading supported by fabricated evidence or AOL has an as yet to be disclosed evidentiary link between a fax transmission AOL received from Officer McMenamon on April 17, 2000 and an e-mail alleged to have been received by an AOL member on April 16, 2000. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and AOL's lawyer perpetrated a fraud upon this Court.

## VIII.

33)   Considering all the pleadings filed in this case, none of which alleges a validated source of data from which a printout of e-mail could be produced, one of two things must be true. Either AOL misrepresented Hughes to a governmental entity and to this Court as the author of a heinous death threat rather than admit It is unable to offer Its members a secure service with which to communicate with each other without fear of an unprovoked malicious criminal prosecution or AOL misrepresented Hughes to a governmental entity and to this Court as the author of a heinous death threat as an unjustified ad hominem attack instigated to prevail in a lawsuit. But regardless of which one it is, by knowingly adducing evidence and making arguments, which created a false impression, and by knowingly withholding material evidence from this Court AOL and Its lawyers perpetrated a fraud upon this Court.

13

## Causes Of Action to Set Aside Judgment for Denial of Due Process Pursuant to Rule 60(b)(4)

### I.

34)   When CV-01-10981(RBC) was reassigned,  Judge Collings spontaneously directed AOL to amend Its Motion to Dismiss based on the forum selection clause with a Motion for Summary Judgment based on the forum selection clause.

35)   One of two things must be true.  Either Judge Collings sua sponte decided that allegations that the document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss, filed with this Court on August 2, 2001 reflects an AOL screen name that identifies Hughes as the author of a life-threatening e-mail dated April 16, 2000 are true but an impediment his ordering summary judgment against Hughes or Judge Collings sua sponte decided that allegations that the document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss, filed with this Court on August 2, 2001 reflects an AOL screen name that identifies Hughes as the author of a life-threatening e-mail dated April 16, 2000  are false and he initiated what he considered an appropriate response, an amended motion for summary judgment.  But regardless of which one it is, Judge Collings knowingly and recklessly demonstrated invidious bias against Hughes and failed to protect his due process rights when he failed his lawful duty to protect the integrity of the Federal Judiciary; maintain a reasonable appearance of impartiality; and failed his duty to protect the due process rights of an unrepresented party.

14

## II.

36)   After seven months of deliberation, Judge Wolf reassigned adjudication of CV-01-

10981(MLW) to Magistrate Judge Collings who sua sponte set in motion a sequence of

events certain to produce judgment in favor of AOL.

37)   One of two things must be true.  Either Judge Wolf failed his lawful duty to dispose

promptly of the business of the Court[1], or Magistrate Judge Collings engaged in an

unnecessary pattern of judicial conduct intended to deny Hughes due process.  But

regardless of which one is true, Judge Collings knowingly and recklessly failed to

maintain a reasonable appearance of impartiality and thereby disqualified himself from

ruling on matters relevant to CV-01-10981(RBC).

---

[1] It is apodictic that district courts have the power to grant summary judgment sua sponte. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); Stella v. Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993); Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1560 (1st Cir. 1989). Properly deployed, that power can complement the courts' case management authority. After all, pretrial conferences aid district courts in "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses." Fed. R. Civ. P. 16(c)(1). Since this process is designed to promote efficiency and conserve judicial resources, see In re Two Appeals, 994 F.2d 956, 965 (1st Cir. 1993), "[t]here is no reason to require that [the elimination of non-trialworthy claims] await a formal motion for summary judgment." Fed. R. Civ. P. 16(c)(1) advisory committee's note to 1983 amendment; accord Aetna Cas. & Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1568 (1st Cir. 1994). Thus, when "the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law," Portsmouth Square, Inc. v. Shareholders Protective Comm., 770 F.2d 866, 869 (9th Cir. 1985), the court may dispose of the entire case by granting summary judgment sua sponte.*fn5 See Capuano v. United States, 955 F.2d 1427, 1432 (11th Cir. 1992); Portsmouth Square, 770 F.2d at 869. Though a district court may enter summary judgment sua sponte at, or in consequence of, a pretrial conference, the court must ensure that the targeted party has an adequate opportunity to dodge the bullet. To this end, we have placed two conditions on unbesought summary judgments. First, a district court ordinarily may order summary judgment on its own initiative only when discovery is sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts. See Stella, 4 F.3d at 55; Jardines Bacata, 878 F.2d at 1561. Second, the court may enter summary judgment sua sponte only if it first gives the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense. See Celotex, 477 U.S. at 326; see also Jardines Bacata, 878 F.2d at 1561 ("`Notice' in this context means that the losing party . . . received a fair opportunity to put its best foot forward."). (Berkovitz v. Home Box Office Inc., 89 F.3D 24 (1st Cir. 07/22/1996))

### III.

38)   It may be true that Judge Wolf found AOL's November 7, 2001 denial that the document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of Its Motion to Dismiss, filed with this Court on August 2, 2001 so diametrically opposite to allegations in AOL's Motion to Dismiss that he intended to conduct hearings to the determine whether or not to initiate appropriate action relevant to unprofessional conduction on the part of a lawyer, or it may be that Judge Collings found the issue of unprofessional conduct irrelevant.  But regardless of which one is true Judge Collings failed to disqualify himself before ordering judgment in a case in which he demonstrated a personal interest by directing AOL to file a motion for summary judgment that he ruled on in favor of AOL himself.

### IV.

39)   Hughes filed a Rule 60(b)(3) motion dated November 7, 2002 in which he claimed AOL and AOL's lawyer committed fraud upon the Court, which Judge Collings denied without a hearing or a finding.

40)   One of two things must be true. Either Judge Collings determined that Hughes' fraud claim was frivolous and he failed his duty to protect the integrity of the federal judiciary by saying so, or Judge Collings determined the Hughes' fraud claim had merit insufficient to initiate appropriate action.  But regardless of which of these is true, appropriate action in cases such as these means nothing more than a search for the truth that will maintain the appearance of integrity and impartiality of the Federal Judiciary which means Judge Collings failed to initiate appropriate action even if it meant nothing more than recognizing the fact that a claim of fraud was made.  By his failure to take any

action in this case Judge Collings knowingly disqualified himself and thereby denied Hughes due process by continuing to issue rulings and orders against him.

## V.

41)   All orders and judgment in this case are void because Judge Collings knowingly disqualified himself from performing the functions of a federal judge when he knowingly and recklessly disregarded his duty to protect the integrity of the federal judiciary; failed to maintain a reasonable appearance of impartiality; and demonstrated personal prejudice against a party who filed a civil lawsuit against him in Federal District Court of Massachusetts Civil Action number CV-03-11140(GAO).

### Prayer

WHEREFORE, Hughes prays judgment against defendants America Online, Inc. and Thomas F. McMenamon Jr, as follows:

That the Judgment entered in the action entitled Walter P. Hughes v. Thomas F. McMenamon, Jr., individually and America Online, Inc., Case No. CV-01-10981(RBC) be set aside and a new trial ordered.

That this Court declare void all judicial actions taken by Judge Collings in Case No. CV-01-10981(RBC).

That this Court take appropriate action should it be made aware of reliable evidence of the likelihood of unprofessional conduct on the part of a judge or a lawyer.

That this Court award Hughes a sanction equal to the amount defendants paid as professional fees to lying character assassins in order to falsely demonize Hughes in the eyes of the Court as a calculating fiend whose *"e-mail account was used to send a vicious*

17

*and graphic death threat to a fourteen year old girl, but the plaintiff avoided prosecution when the district attorney entered a nolle prosequi. He now seeks to benefit financially from the situation".*

An award of such other and further relief as the court deems just and equitable.

DATED:  July 26th 2004

Respectfully Submitted,

Walter P. Hughes, pro se
13 Lockway Road
Andover, MA 01810
978-475-8547

18