

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
1 COURTHOUSE WAY
BOSTON MASSACHUSETTS

Walter P. Hughes, pro se

              Plaintiff,

vs.

                                   INDEPENDENT ACTION

Thomas F. McMenamon, Jr.         Civil Action No. 04-11662(NMG)

vs..

America Online, Inc.

              Defendants

PLAINTIFF'S MOTION FOR APPROPRIATE ACTION PURSUANT TO CANON
3B(3) OF THE CODE OF CONDUCT FOR UNITED STATES JUDGES
OR TO RECUSE PURSUANT TO 28 U.S.C. 455(a).

### Introduction

This motion is offered to crystallize the issues with regard to Plaintiff's

Independent Action, which alleges unprofessional conduct on the part of a judge and a

lawyer.

The unprofessional conduct on the part of a lawyer occurred in the underlying

action in which a lawyer knowingly signed and filed a motion to dismiss supported by

evidence subsequently proved false by sworn declarations offered by the movant. A

magistrate judge became aware of the unprofessional conduct on the part of the lawyer

and instead of initiating appropriate action inaugurated a process intended to ensure that

the movant prevailed in the lawsuit.

1

Plaintiff offers this motion because it would seem that if he made the existence of reliable evidence clear in the initial independent action this Court would have already initiated appropriate action pursuant to Canon 3B(3)[1] of the Code of Conduct for United States Judges.

## Background

The civil case, CV-01-10981(RBC), which underlies this Independent Action, Defendant America Online, Inc. ("AOL") responded to Plaintiff Walther P. Hughes ("Hughes") Complaint with a Motion to Dismiss that claims forum selection supported by evidence offered to prove that Hughes engaged in an illegal forum activity on April 16, 2000 which triggered the forum selection clause in AOL's terms of service agreement[2] under which AOL provided Hughes with e-mail service.

The supporting evidence is a document copied as a public record from a criminal file and offered to the CV-01-10981(RBC) Court as a printout of e-mail offered to prove that Hughes, acting as an AOL member, sent a death threat e-mail to another AOL member via AOL's e-mail service on April 16, 2000.

On November 7, 2002 AOL filed a response to a Hughes motion for a temporary restraining order supported by two declarations. The first, sworn to under penalty of perjury on November 5, 2001 by J. Charles Wilhelm, a product support specialist employed by AOL. ("Wilhelm Declaration"), The second, sworn to under penalty of perjury on November 6, 2001 by Mark Constable, a paralegal in the employee of AOL's lawyer ("Constable Declaration"). The essence of the declarations is to assert the source

---

[1] Canon 3B(3): *A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer.*
[2] See copy attached at Tab 6

of the evidence offered to support allegations in AOL's Motion to Dismiss that Hughes violated AOL's terms of service agreement by engaging in an illegal activity on April 16, 2000 that triggered its forum selection clause is a fax communication AOL received from Defendant Thomas F. McMenamon Jr., a police officer employed by the City of Methuen Massachusetts, ("Officer McMenamon"), not an e-mail sent or received by any AOL member via AOL's e-mail service on April 16, 2000.

On March 20, 2002 CV-01-10981(RBC) was reassigned to Magistrate Judge Robert B. Collings ("Judge Collings").

On March 28, 2002 Judge Collings denied Hughes discovery.

On March 29, 2003 Judge Collings issued an ex parte order that denied AOL's Motion to Dismiss in favor of AOL providing additional evidence to support a Motion for Summary Judgment based on the forum selection clause.

On May 28, 2002, Judge Collings ordered judgment against Hughes without a hearing or discovery.

On November 7, 2002, Hughes filed a Rule 60(b)(3) motion supported by evidence that fraud had been committed on the Court by officers of the Court.

On November 22, 2002, Judge Collings denied Hughes' Rule 60(b)(3) without a hearing or a finding.

### Relevant Docket Entries

The Docket for CV-01-10981(RBC) as of November 25, 2002 is attached at Tab 5 with relevant entries listed here for ready reference:

(#1)    June 8, 2001, Hughes filed cv-01-10981.

(#9)   August 1, 2001, AOL responded to Hughes' Complaint with a Motion to Dismiss.

(#14)   August 14, 2001, Hughes filed a motion to defer a hearing on AOL's Motion To Dismiss until after discovery.

(#22)   October 12, 2001, Hughes filed an ex parte motion for a temporary restraining order. (Requesting that the contents of an alleged printout of e-mail remain private until the court ruled on whether or not they were intercepted pursuant to M.G.L. c.272 s.99).

(#25)   October 17, 2001, Judge Mark L. Wolf granted in part and denied in part Hughes ex party motion for a temporary restraining order (#22).

(#32)   November 7, 2001, AOL response to Hughes request for a temporary restraining order (#22)

(#43)   March 20, 2002, Judge Mark L. Wolf reassigned cv-01-10981 to Magistrate Judge Robert B. Collings ("Judge Collings") for all purposes.[3]

(#--)   March 28, 2002, Judge Collings denied Hughes' motion to defer a hearing on AOL's Motion to Dismiss (docket entry 14 –1).

(#--)   March 29, 2002, Judge Collings denied AOL's Motion to Dismiss (docket entry 9 – 1) without prejudice to filing a motion for summary judgment based on the forum selection clause. (#44).

(#47)   April 17, 2002, AOL filed a motion for summary judgment based on the forum selection clause.

(#52)   May 28, 2002, Judge Collings granted AOL's Motion for Summary Judgment Based On The Forum Selection Clause.

(#56)   November 7, 2002, Hughes filed a Rule 60(b)(3) to set aside judgment on defendant AOL's Motion for Summary Judgment Based On The Forum Selection Clause.(#47)

(#--)   November 22, 2002, Judge Collings denied Hughes Rule 60(b)(3) Motion (#56) to to set aside judgment on defendant AOL's Motion for Summary Judgment Based On The Forum Selection Clause (#47).

---

[3] See docket entry #42 page 6 at Tab 5

## Arguments That Support Reliable Evidence Of Unprofessional Conduct On The Part Of A Judge Or A Lawyer

### Introduction

A printout is the printed output of a computer[4].

E-mail is a readable by sight message that originates as data stored in a sender's computer and is transmitted to a recipient's computer as data to a service provider's computer where it is accessible by its recipient on request.

A printout of e-mail is a readable by sight message accurately produced from data stored in a computer.

A material fact with regard to this motion is that a printout of e-mail was not copied from a criminal file and introduced as evidence in this case.

On November 5, 2001 J. Charles Wilhelm, a Product Support Specialist employed by AOL ("Wilhelm"), declared, under penalty of perjury ("The Wilhelm Declaration")[5], that Officer McMenamon faxed him a copy of a death threat an AOL subscriber making a criminal complaint printed on April 16, 2000.

Wilhelm declared that Officer McMenamon's fax does not reflect contents of an e-mail message sent to, or received by, an AOL member via AOL on April 16, 2000 but it does reflect that it was printed by a person with an AOL screen name (¶9).

The materials Wilhelm reviewed for Officer McMenamon were retained by AOL (¶10) and a summons dated April 20, 2000[6] indicates they were subsequently introduced as evidence in a Massachusetts Criminal case titled Commonwealth v. Walter P. Hughes, No. 0018JT3828(Mass. Dist. C. 2000) (*Commonwealth v. Hughes*).

---

[4] The American Heritage Dictionary (at 985) (2d College Edition 1982)
[5] See copy attached at Tab 2.
[6] See copy of summons attached at Tab 3

On November 6, 2001, Mark Constable, a paralegal employed by AOL's lawyer ("Constable") declared, under penalty of perjury ("The Constable Declaration")[7], that Officer McMenamon prepared a police report that reflects that a child and her parent walked into the City of Methuen Police Headquarters on April 17, 2000 and provided him with a death threat an AOL member using the AOL screen name"GrLsRuLe14" received and "had printed" on April 16, 2000 that Constable subsequently had copied from the *Commonwealth v. Hughes* file and proffered to this Court as evidence that *appeared to be a printout of e-mail at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of its Motion to Dismiss, filed with this Court on August 2, 2001.*

There is no evidence that supports Officer McMenamon's police report regarding a person who made a criminal complaint that she printed either a death threat or e-mail as an AOL member on April 16, 2000.

On March 20, 2002, Judge Collings became aware that the document Mark Constable swore is a death threat introduced to and copied from the *Commonwealth v. Hughes* and introduced as such at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of its Motion to Dismiss, filed with this Court on August 2, 2001 (¶7) is a copy of the material Wilhelm faxed to Officer McMenamon on April 17, 2000 which does not include a document that reflects a death threat sent from one AOL member to another AOL member via AOL's e-mail service on April 16, 2000.

On March 28, 2002, Judge Collings denied Hughes' request for discovery before a hearing on AOL's Motion to Dismiss.

---

[7] See copy attached at Tab 1.

On March 29, 2002, Judge Collings issued an ex parte order that denied AOL's Motion to Dismiss in favor of AOL filing a motion for summary judgment based on the forum selection clause supported by new evidence.

On March 29, 2002, Judge Collings failed to recuse himself before ruling on the motion for summary judgment he directed AOL to file.

I

The Wilhelm Declaration and The Constable Declaration must be true or a lawyer who signed AOL's Response to Hughes' request for a temporary restraining order on November 7, 2000 supported by those declarations made the Court aware of reliable evidence that indicates the likelihood of unprofessional conduct on the part of a lawyer.

However, The Wilhelm Declaration states *with certainty that at approximately 12:24 pm on April 17, 2000, Officer Thomas F. McMenamon, Jr., of the Methuen Massachusetts Police Department, reported to me that he was investigating a death threat made by one AOL member via e-mail to another AOL member. Officer McMenamon stated that he had a copy of the threat that he was willing to fax to AOL,* upon receipt of Officer McMenamon's fax he stated that its content *appears to be a printout of an e-mail dated April 16, 2000 from "MooMoo868790043" to "GrLsRuLe14.",* but confirmed from AOL's records that the content *was not produced by AOL to Officer McMenamon from any internal logs of e-mails sent or received by AOL members.* The Constable Declaration states that Officer McMenamon's police report dated Monday, 04/17/00 11:09, *reflects that Officer McMenamon had received a printout of the threatening email from the recipient at the time the recipient made her complaint to the police* and that document *appeared to be a printout of an e-mail dated April 16,*

7

*2000 from "MooMoo868790043" to "GrLsRuLe14." This document appears in all relevant respects to be identical to the document located at Tab A of the Appendix of Defendant America Online, Inc.'s Memorandum in Support of its Motion to Dismiss, filed with this Court on August 2, 2001.* The Constable Declaration fails to state what Wilhelm declared, to wit, that the document Officer McMenamon received from a Complainant and at 1109 and faxed to AOL at 1231 *was not produced by AOL to Officer McMenamon from any internal logs of e-mails sent or received by AOL members.*

One of two things must be true. Either The Wilhelm Declaration reflects that AOL advised Officer McMenamon that the death threat message a claimant said she printed using AOL software did not originate as e-mail from an AOL member AOL assigned the screen name "MooMoo868790043" and was not delivered by AOL to an AOL member recipient AOL assigned the screen name "GrLsRuLe14" or The Constable Declaration reflects a document that "appeared to be a printout of e-mail" is unsupported by direct evidence that the apparent printout of e-mail was produced from data stored in a computer. But regardless of which one it is, by knowingly signing a pleading with declarations that create a false impression and adducing evidence contradicted by stated facts, a lawyer violated his duty of candor to the tribunal and made the Court aware of reliable evidence that indicates the likelihood of the unprofessional conduct contemplated by Canon 3B(3) of the Code of Conduct for United States Judges

## II

One of two things must be true. Either *the Criminal Division Clerk's Office of the Lawrence District Court, located in the Fenton Judicial Center, 2 Appleton Street, Lawrence, Massachusetts* copied direct evidence that *the criminal file in the case of*

*Commonwealth v. Walter P. Hughes, No. 0018JT3828(Mass. Dist. C. 2000)* contains a public record that reflects a death threat e-mail printed by an AOL member assigned the screen name "GrLsRuLe14" supported by direct evidence that shows that file also contains an electronically recorded death threat e-mail and authority for its publication by a chief judge pursuant to M.G.L. c.272 s.99 N; a warrant showing it was introduced to that file pursuant to M.G.L. c.272 s.99 B(16); and an arrest warrant that shows Officer McMenamon intended to arrest a person accused of sending a death threat pursuant to M.G.L. c.275 s.3[8] or *the Criminal Division Clerk's Office of the Lawrence District Court, located in the Fenton Judicial Center, 2 Appleton Street, Lawrence, Massachusetts* did not copy *what appeared to be a printout of an e-mail dated April 16, 2000 from "MooMoo868790043" to "GrLsRuLe14."* as sworn to in the Constable Declaration. But regardless of which one it is, by knowingly signing a pleading with declarations that create a false impression and adducing evidence contradicted by stated facts, a lawyer violated his duty of candor to the tribunal and made the Court aware of reliable evidence that indicates the likelihood of the unprofessional conduct contemplated by Canon 3B(3) of the Code of Conduct for United States Judges.

**III**

---

[8] (M.G.L. c.275 s.2) - Complaint of threat to commit crime:  *If complaint is made to any such court or justice that a person has threatened to commit a crime against the person or property of another, such court or justice shall examine the complainant and any witnesses who may be produced, on oath, reduce the complaint to writing and cause it to be subscribed by the complainant.*
(M.G.L. c.275 s.3) - Warrant to apprehend accused:  *If, upon such examination, it is found there is just cause to fear that such crime may be committed, such court or justice shall issue a warrant, reciting the substance of the complaint, and requiring the officer to whom it is directed forthwith to apprehend the person complained of and take him before such justice or some other justice or court*

AOL transmits e-mail to AOL members that does not originate with AOL members but rather from an e-mail service provider other than AOL who may issue the same screen names such as "MooMoo868790043" or "GrLsRuLe14" to one of its members. To prove the origin of such e-mail requires proof that such data are stored in an e-mail provider's computer, the e-mail sender's computer, or the e-mail recipient's computer.

One of two things must be true. Either The Constable Declaration and/or the Wilhelm Declaration reflect direct evidence that proves the contents of a death threat e-mail[9] dated April 16, 2000 from "MooMoo868790043" to "GrLsRuLe14" are stored as data in a computer or there is no proof that supports the Constable Declaration which states *the Criminal Division Clerk's Office of the Lawrence District Court, located in the Fenton Judicial Center, 2 Appleton Street, Lawrence, Massachusetts* copied a printout of e-mail from *the criminal file in the case of Commonwealth v. Walter P. Hughes, No. 0018JT3828(Mass. Dist. C. 2000).* But regardless of which one it is, by knowingly signing a pleading with declarations that create a false impression and adducing evidence contradicted by stated facts, a lawyer violated his duty of candor to the tribunal and made the Court aware of reliable evidence that indicates the likelihood of the unprofessional conduct contemplated by Canon 3B(3) of the Code of Conduct for United States Judges.

## VI

AOL unwittingly transmits e-mail to AOL members that appears to be e-mail that originated with an AOL member with an AOL screen name such as MooMoo868790043"

---

[9] *The term "contents", when used with respect to any wire or oral communication, means any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication.* (M.G.L. c.272 s.99 B(5))

but instead originates with a person who has gained unauthorized access to AOL's e-mail service and customer account database[10]. In other words, it is a universally accepted fact that you cannot identify the parties to an e-mail communication from the face of the e-mail.

One of two things must be true. Either there is known direct evidence that a given e-mail is stored as data in a computer or there is no evidence that a printed message is e-mail at all. But regardless of which one it is, by knowingly signing a pleading with declarations that create a false impression and adducing a printed message as e-mail printed by an AOL member on April 16, 2000 a lawyer violated his duty of candor to the tribunal and made the Court aware of reliable evidence that indicates the likelihood of the unprofessional conduct contemplated by Canon 3B(3) of the Code of Conduct for United States Judges.

## VII

Judge Collings became aware of unprofessional conduct on the part of a lawyer and learned that AOL could not prevail with its Motion to Dismiss based on the forum selection clause when he read the contradictions reflected by the Constable and Wilhelm Declarations shortly after CV-01-10981(RBC) was reassigned to him for adjudication on March 20, 2002.

Judge Collings launched a scheme intended to ensure a favorable outcome for AOL when he denied Hughes' August 14, 2001 requested discovery on March 28, 2002 and denied AOL's August 2, 2001 otion to Dismiss, which reflects reliable evidence of

---

[10] See published reports acknowledged by AOL attached at Tab 4.

unprofessional conduct, in favor of AOL producing forum evidence and filing a motion

for summary judgment based on the forum selection clause on March 29, 2002.

One of two things must be true. Either Judge Collings denied Hughes discovery

for notions of economy or to suit his fancy with regard to a prejudged opinion with regard

to AOL's claims or he truly believed that there was no discoverable material fact that

would result in a judgment in favor of Hughes. But regardless of which one it is, Judge

Collings demonstrated an intent to ensure an outcome favorable to AOL without a

hearing on the merits of the case and thereby failed to maintain an appearance of

impartiality mandated by Canon 3C(1) [11] of The Code of Conduct for United States

Judges and 28 U.S.C. §455(a).

# VIII

On March 29, 2002, Judge Collings, ex parte, denied AOL's August 2, 2001

Motion to Dismiss, with its reliable evidence of unprofessional conduct, in favor of AOL

filing a motion for summary judgment based on the forum selection clause supported by

undiscovered forum evidence.

One of two things must be true. Either Judge Collings deemed AOL's August 2,

2001 Motion to Dismiss fatally flawed in light of the Constable and Wilhelm

Declarations filed on November 7, 2001 and thereby denied it[12], or Judge Collings

deemed AOL's August 2, 2001 Motion to Dismiss fatally flawed because it reflects an

unsupported specific claim to forum jurisdiction. But regardless, Judge Collings

---

[11] **Canon 3C(1) provides:** "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioFned ..."

[12] "The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights ... to preserve judicial integrity ... and finally, as a remedy designed to deter illegal conduct ... " (Hasting, 461 U.S. at 505 (internal citations omitted)).

appeared intent on ensuring a favorable outcome for AOL[13] in violation of 28 U.S.C. §455(a)[14] and Canon 3C(1) of The Code of Conduct for United States Judges; thereby making this Court aware of reliable evidence that indicates the likelihood of unprofessional conduct on the part of a judge pursuant to Canon 3B(3).

## IX

On March 29, 2002, Judge Collings issued an ex parte order for AOL to produce additional forum evidence and file a motion to dismiss based on the forum selection clause.

One of two things must be true.  Either there was no discoverable material fact that would effect the outcome of the case when Judge Collings denied Hughes' request for discovery on March 28, 2002 and Judge Collings failed to dispose promptly of the business of the court pursuant to Canon 3A(5)[15] or Judge Collings intervened on behalf of a represented party and thereby failed to maintain an appearance of impartiality.[16] But

---

[13] "The standard for determining disqualification is "whether a reasonable person would be convinced the judge was biased." (Hook v. McDade, 89 F.3d 350, 355 (7th Cir. 1996))

[14] "[I]n addition, events occurring during the trial can be cause for disqualification, if the events display an inability of the judge to render fair judgment, an exception to the extrajudicial source factor (**Liteky**, at 1155, 1160), or that there is "an intent to ensure that one side or the other shall prevail, there can be little doubt that he or she must recuse." **Liteky**, at 1159." ( Liteky v. U.S., 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (U.S. 03/07/1994)

[15] *It is apodictic that district courts have the power to grant summary judgment sua sponte. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); Stella v. Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993); Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1560 (1st Cir. 1989). Properly deployed, that power can complement the courts' case management authority. After all, pretrial conferences aid district courts in "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses." Fed. R. Civ. P. 16(c)(1).* (Berkovitz v. Home Box Office Inc., 89 F.3D 24 (1st Cir. 07/22/1996))

[16] ( Liteky v. U.S., 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (U.S. 03/07/1994)

regardless, Judge Collings appeared [17]intent on ensuring a favorable outcome for AOL in violation of 28 U.S.C. §455(a) [18] and Canon 3C(1) of The Code of Conduct for United States Judges; thereby making this Court aware of reliable evidence that indicates the likelihood of unprofessional conduct on the part of a judge pursuant to Canon 3B(3).

## X

On March 29, 2002, Judge Collings clearly issued an ex parte order intended to provide AOL with a favorable outcome in the case and Judge Collings clearly had a duty to immediately assure Hughes and the world that the anticipated result would appear impartial by recusing himself in favor of another judge hearing AOL's anticipated motion for summary judgment based on the forum selection clause. Because Judge Collings did not recuse himself he violated Canon 3C(1) of The Code of Conduct for United States Judges; thereby making this Court aware of reliable evidence that indicates the likelihood of unprofessional conduct on the part of a judge pursuant to Canon 3B(3).

## XI

Judge Collings fulfilled his intent to ensure a favorable outcome for AOL when he ordered judgment based on the forum selection clause in favor of AOL on May 28, 2002 in violation of 28 U.S.C. §455(a)[19]; thereby making this Court aware of reliable

---

[17] "The standard for determining disqualification is "whether a reasonable person would be convinced the judge was biased." (Hook v. McDade, 89 F.3d 350, 355 (7th Cir. 1996))

[18] "[I]n addition, events occurring during the trial can be cause for disqualification, if the events display an inability of the judge to render fair judgment, an exception to the extrajudicial source factor (Liteky, at 1155, 1160), or that there is "an intent to ensure that one side or the other shall prevail, there can be little doubt that he or she must recuse." Liteky, at 1159." ( Liteky v. U.S., 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (U.S. 03/07/1994)

[19] ( Liteky v. U.S., 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (U.S. 03/07/1994)

evidence that indicates the likelihood of unprofessional conduct on the part of a judge

pursuant to Canon 3B(3).

## XII

On November 7, 2002, Hughes made Judge Collings aware of reliable evidence

that indicates the likelihood of unprofessional conduct on the part of a lawyer with a Rule

60(b)(3) motion that claims an officer of the court committed fraud upon the court and

Judge Collings failed to initiate appropriate action pursuant to Canon 3B(3) of The Code

of Conduct for United States Judges thereby making the Court aware of reliable evidence

that indicates the likelihood of unprofessional conduct on the part of a judge pursuant to

Canon 3B(3).

. But regardless of which one it is, Judge Collings failed to initiate appropriate

action on reliable evidence that indicates the likelihood of unprofessional conduct on the

part of a lawyer and thereby made the court aware of reliable  evidence that indicates the

likelihood of unprofessional conduct on the part of a judge.

## XIII

A Rule 60(b)(3) motion requires judicial response because it exposes the integrity

and independence of the Federal Judiciary to question.  Nevertheless, on November 22,

2002, Judge Collings denied Hughes' Rule 60(b)(3) motion without a hearing or a

finding.

One of two things must be true.  Either Judge Collings denied Hughes' Rule

60(b)(3) motion without a ruling or a finding because he determined it was unsupported

by reliable evidence or Judge Collings used his inherent power to manage cases

effectively[20] .But regardless of which one it is, Judge Collings failed his duty to uphold the appearance integrity of integrity and impartiality required by Canon 1 of The Code of Conduct for United States Judges and 28 U.S.C. §455(a) and thereby made this Court aware of reliable evidence that indicates the likelihood of unprofessional conduct on the part of a judge pursuant to Cannon 3B(3).

XIV

An Independent Action such as this is independent of any cause of action between the parties in the underlying dispute.  It is intended to ensure the appearance of integrity and impartiality of the federal court system has not been compromised in any way by acts of those who have sworn to uphold the integrity and impartiality of that system.

The Court cannot subordinate its mandated duty to maintain an appearance of integrity and impartiality to any procedural issue other than initiation of appropriate action that results in clear and convincing evidence that the basis for justice in a civilized society is truth under any and all circumstances.

The alternative to initiating appropriate action pursuant to Canon 3B(3) in the context of an Independent Action is for the presiding judge to recuse in favor of a Court with an interest in maintaining an appearance of integrity and impartiality.

**Conclusion**

---

[20] Federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)

A federal judge takes an oath to perform his judicial duties impartially in accordance with the Constitution and the law[21]. The D.C. Circuit has stated that "*[t]he Code of Conduct is the law with respect to the ethical obligations of federal judges.*" United States v. Microsoft Corp., 253 F.3d 34, 113 (D.C. Cir. 2001).

The consequence of a judge abiding by the law and his oath in this case does nothing more than to determine whether or not the facts support reliable evidence of the likelihood of unprofessional conduct and if so, refer it to proper authority to establish the truth of the matter. In short this request is to have the Court do what it proclaims is its basic duty – to search for the truth.

WHEREFORE, Hughes prays that this Court do what it requires all persons who appear before it do, obey the law; and by doing so remove the stigma of slogan from the profound words of President John Adams and Justice Louis Brandeis regarding truth and justice that are conspicuously engraved on the walls of the John Joseph Moakley Courthouse.

Dated October 13, 2004

Walter P. Hughes, pro se
13 Lockway Road
Andover, MA 01810

CERTIFICATE OF SERVICE

---

[21] Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, _____ _____, do **solemnly swear** (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that
I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____**under the Constitution and laws of the United States. So help me God**" 28 U.S.C. § 453  (emphasis added).

17

I, Walter P. Hughes, do hereby certify that on the thirteenth day of October 2004, I served a copy of Plaintiff's Motion for Appropriate Action Pursuant to Canon 3B(3) of The Code of Conduct for United States Judges or To Recuse Pursuant to 28 U.S.C. 455(a) in Independent Action no. 04-11662(NMG), by first-class mail, postage prepaid upon the following:

Wilmer Cutler Pickering, LLP
2445 M Street N.W.
Washington, D.C. 20037

Kopelman & Paige, PC
31 St. James Ave.
Boston MA 02116


Walter P. Hughes, Pro Se